# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONALD R. POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:12-CV-4080-VEH** |
| | ) | |
| **HARSCO METAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## MEMORANDUM OPINION AND ORDER

This employment discrimination and Alabama state law tort action was filed by the plaintiff, Donald R. Powell, against the defendant, Harsco Metals ("Harsco").[1] (Doc. 1, p. 2.) The claims are set out in several different places in the complaint. Under the heading "First Claim for Relief," the plaintiff makes a claim for race discrimination and retaliation under both Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981. (Doc. 1, p. 5.) Under the heading "Second Claim for Relief," the plaintiff makes an Alabama state law claim of intentional infliction of emotional distress. (Doc. 1, p. 5.) Then, in a third section of the complaint, under the heading

---

[1]The defendant refers to itself as Harsco Metals, in the plural. It has been sued as Harsco Metal. Regardless, the court will refer to it as Harsco.

"Nature of the Action and Relief Sought," the plaintiff also states a claim "under the common law of the State of Alabama for invasion of privacy." (Doc. 1, p. 2.) Finally, in the "Facts" section of the complaint, the plaintiff alleges that the defendant's conduct created a "hostile working environment," and that the defendant engaged in a "pattern and practice of employment discrimination based on race." (Doc. 1, p. 4.)[2]  All of the claims arise out of the plaintiff's employment with the defendant.

The case comes before the court on the defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  (Doc. 7.) For the reasons states herein, the motion will be **GRANTED in part** and **DENIED in part**.

## I.      STANDARD

"[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support

---

[2]Paragraph 1.1 of the complaint alleges that this is an action "arising under the laws of the United States of America, in particular Title VII . . . .42 U.S.C. 1981a, and 29 U.S.C. § 626(c)(1) and 626(e)." (Doc. 1, p. 1.)    The court has already acknowledged that the action is brought under Title VII.  Title 42 U.S.C. § 1981a merely provides the range of monetary and other relief available under Title VII.   It does not create a separate cause of action.  Title 29 U.S.C. §§ 626(c)(1) and 626(e) relate to "recordkeeping, investigation, and enforcement" in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  There are no factual allegations whatsoever relating to age discrimination.  Any claim under the ADEA will therefore be dismissed.

of his claim which would entitle him to relief." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). "Moreover, when ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded <u>facts</u> [and reasonable inferences drawn from those facts] as true." *Id*. (emphasis added). A court looks to the facts alleged in the plaintiff's complaint, and not its merely conclusory statements, when ruling on a motion to dismiss. Thus, to survive a motion to dismiss for failure to state a claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1965. Mere conclusory statements in support of a threadbare recital of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## II.   ALLEGATIONS IN THE COMPLAINT

The plaintiff is an African American who, at the time of the events described in the complaint, was employed by the defendant. (Doc. 1, p. 2.) He began working for the defendant on April 7, 2007, in the position of "loader." (Doc. 1, p. 3.)

Eventually he moved to the position of "lube man," which he held at the time of the events described in the complaint.  (Doc. 1, p. 3.)

On December 7, 2011, the plaintiff and a co-worker named Mason Woods had a verbal altercation during which Woods called the plaintiff a "black mother fucker" and threatened to kill the plaintiff.  (Doc. 1, p. 3.) The complaint does not state whether this occurred at work and if it occurred during work hours.  The plaintiff "reported the incident to his white supervisor Bruce Anderson who advised him 'to not worry about it.'"  (Doc. 1, p. 3.)  The complaint does not say when the plaintiff reported the incident, what he described, or whether he told Anderson that he felt he had been the victim of discrimination.

The complaint then states that "[l]ater that evening," apparently meaning the evening of December 7, 2011, Mason Woods and his brother Matthew Woods (who the complaint implies was also employed by the defendant) physically assaulted and injured the plaintiff.  (Doc. 1, p. 3.)  The complaint does not state whether this occurred at work and if it occurred during work hours.

On December 8, 2011, the plaintiff was off work because of his injuries from the assault.  Eddie Ishmel, the Safety Coordinator for the defendant, called Powell and told the plaintiff that he had been suspended without pay because of "the altercation."  (Doc.1, p. 3.)  The complaint is not specific as to whether "the

4

altercation" refers to the original verbal altercation or the later physical one.  The plaintiff's suspension lasted for three days. (Doc. 1, p. 3.)  The complaint alleges that the plaintiff was suspended "despite doing exceptionally good work and getting good reviews." (Doc. 1, p. 3.)  Neither Mason Woods nor Matthew Woods was disciplined by the defendant.  (Doc. 1, p. 3.)

The complaint *generally* alleges that the defendant has "maintained" a "pattern and practice" of discrimination against African American employees.  (Doc. 1, p. 2.) The complaint generally alleges the following general examples of said pattern and practice:  "showing favoritism to white employees," "subjecting black employees to harsh and unreasonable performance standards not generally applied and not consistent with applicable personnel practices and regulations," "[t]erminating, suspending or otherwise disciplining employees who [are] black while not taking such actions against white employees for the same or similar conduct," "abuse of authority by white supervisors to subject black employees to humiliation, embarrassment and invasion of . . . privacy," "[w]hite supervisors subjecting [b]lack employees to harsher discipline then accorded [white][3] employees for the same or comparable misconduct," and "[s]ubjecting black employees to pressure and coercion to abandon employment with the [d]efendant." (Doc. 1, p. 3.)  The complaint cites

---

[3]The complaint erroneously uses "black" here when "white" was clearly intended.

5

no specific facts in support of any of this conduct.

Finally, the complaint generally alleges that the plaintiff "complained of the acts against him," but it is not specific as to whether it is referring to the discussion the plaintiff had with Anderson after the initial verbal altercation, or some other complaint. (Doc. 1, p. 4.)

## III.   ANALYSIS

As noted above, it appears that the complaint attempts to set out claims under Title VII, 42 U.S.C. § 1981, and Alabama state law. The defendant moves to dismiss all of these claims. They will be addressed in turn.

### A.     The Title VII and Section 1981 Claims

The Eleventh Circuit has explained:

> Title VII prohibits employers from discriminating against any individual with respect to the terms of employment on the basis of race or sex. 42 U.S.C. § 2000e-2(a)(1). Section 1981 also prohibits discrimination in the making and enforcing of contracts based on a person's race. 42 U.S.C. § 1981(a). . . . The same analysis applies to claims for employment discrimination brought under Title VII as to those brought under § 1981.

*Phillips v. Aaron Rents, Inc.*, 262 Fed.Appx. 202, 207 (11th Cir. 2008). The plaintiff alleges that he was treated differently from other employees when he was suspended and the Woods brothers were not. This is a "disparate treatment" claim. He also alleges that the defendant discriminated against him by creating a "hostile work

6

environment," and that it retaliated against him.  Further, the plaintiff alleges a pattern

and practice of employment discrimination.

### 1.   *Pattern and Practice*

The defendant argues that the plaintiff cannot bring a pattern and practice claim

on behalf of himself alone, only on behalf of a class.  (Doc. 8, pp. 9-12.)  The plaintiff

does not address this argument in his brief.

The Eleventh Circuit has noted:

> Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a),
> entitles the Government to bring a pattern or practice claim on behalf of
> a class of similarly situated employees for declaratory and injunctive
> relief against an ongoing act of intentional discrimination in violation
> of Title VII. A pattern or practice claim for such relief may also be
> brought under Title VII as a class action, pursuant to Federal Rule of
> Civil Procedure 23(b)(2), by one or more of the similarly situated
> employees.

*Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964-65 (11th Cir. 2008).

The instant case is neither brought by the government nor on behalf of similarly

situated plaintiffs.  Further, the pattern and practice allegations contain no factual

support.  They are mere conclusions which "are not entitled to the assumption of

truth."  *Iqbal*, 556 U.S. at 679.  Accordingly, the pattern and practice claims fail.

### 2.   *Disparate Treatment*

The defendant argues that the complaint should be dismissed because it "fails

to state sufficient facts to establish a *prima facie* case under the *McDonnell-Douglas*

framework." (Doc. 8, p. 7.)

> Disparate treatment claims can be proven using direct evidence
> (requiring no inference or presumption) or circumstantial evidence. *Id.*
> Racial discrimination claims based on circumstantial evidence are
> evaluated under the *McDonnell Douglas* burden shifting framework. *See
> id.* To establish a prima facie case for disparate treatment in a race
> discrimination case, the plaintiff must show that: (1) she is a member of
> a protected class; (2) she was subjected to an adverse employment
> action; (3) her employer treated similarly situated employees outside of
> her protected class more favorably than she was treated; and (4) she was
> qualified to do the job. *Id.* If the plaintiff satisfies these elements, then
> the defendant must show a legitimate, non-discriminatory reason for its
> employment action. *Id.* If it does so, then the plaintiff must prove that
> the reason provided by the defendant is a pretext for unlawful
> discrimination. *Id.*

*Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

The Supreme Court has expressly rejected the requirement that the plaintiff

provide facts to support each element of the prima facie case at this stage.   In

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506  (2002), the court noted that "[t]he prima

facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading

requirement."  *Swierkiewicz*, 534 U.S. at 510.  Further, the court noted that "it is not

appropriate to require a plaintiff to plead facts establishing a prima facie case because

the  *McDonnell Douglas*  framework  does  not  apply  in  every  employment

discrimination case.  For instance, if a plaintiff is able to produce direct evidence of

8

discrimination, he may prevail without proving all the elements of a prima facie case." *Id.* at 511.

In a pre-*Twombly* analysis of *Swierkiewicz*, the Eleventh Circuit noted:

> It is important to explicate the holding of *Swierkiewicz,* and how its pleading standards have been understood within this Circuit. First, while *Swierkiewicz* made clear that pleading a *McDonnell Douglas prima facie* case was not necessary to survive a motion to dismiss, it did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based. *See Swierkiewicz,* 534 U.S. at 508 n. 1, 122 S.Ct. at 996 n. 1 ("Because we review here a decision granting respondent's motion to dismiss, we must accept as true all of the *factual* allegations contained in the complaint." (emphasis added)); *id.* at 514, 122 S.Ct. at 999 (finding pleadings sufficient because "[t]hese allegations give respondent fair notice of what [the plaintiff's] claims are *and the grounds upon which they rest.*" (emphasis added)). . . . [I]n *Swierkiewicz,* "the Court did *not* hold that the complaint's factual allegations were entirely ancillary."(emphasis in original).
>
> . . .
>
> [W]hile "a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." . . . "Pleadings must be something more than an ingenious academic exercise in the conceivable." . . . "[U]nsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." . . . The liberal standard of notice pleading still requires a plaintiff to provide the defendant with fair notice of the factual grounds on which the complaint rests.

*Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270-71 (11th Cir. 2004).

*Twombly* and *Iqbal* were decided after *Jackson*. The court has found no

published post-*Twomby/Iqbal* Eleventh Circuit case on this issue.  However, in a

recent unpublished case, the Eleventh Circuit wrote:

> "Although a Title VII complaint need not allege facts sufficient to make
> out a classic *McDonnell Douglas  prima facie* case, it must provide
> 'enough factual matter (taken as true) to suggest' intentional ...
> discrimination." *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d
> 955, 974 (11th Cir.2008) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S.
> 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002), and *Twombly,* 127 S.Ct.
> at 1965). In addition to containing well-pleaded factual allegations,
> complaints must also meet the "plausibility standard" set forth in
> *Twombly* and *Iqbal. See Iqbal,* 129 S.Ct. at 1949–50. This plausibility
> standard requires "more than a sheer possibility that a defendant has
> acted unlawfully." *Id.* at 1949. "Where a complaint pleads facts that are
> merely consistent with a defendant's liability, it stops short of the line
> between possibility and plausibility of entitlement to relief." *Id.*
> (quotations omitted). Our analysis of the plausibility standard is
> "context-specific" and "requires [us] to draw on [our] judicial
> experience and common sense." *Id.* at 1950.

*Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, No. 12-12244, 2013 WL 563180

at *3 (11th Cir. Feb. 15, 2013).[4]  In *Bowers,* the court, while not requiring the

pleading of facts supporting *every* element, still considered the elements of the *prima*

*facie* case in determining whether the claim was plausible.   Accordingly, at the very

least, the elements are a helpful guide to the determination of the issue before the

court.

Here, there is no dispute that the plaintiff, as an African American male, is a

---

[4]"Unpublished opinions are not considered binding precedent, but they may be
cited as persuasive authority."  11th Cir. R. 36-2.

member of a protected class and that he was subjected to adverse employment action when he was suspended without pay. The defendant argues only that the plaintiff has shown no similarly situated employees who were treated more favorably than the plaintiff for the same conduct. The plaintiff does not respond to this argument in his brief.

As to this issue,

> [t]he Eleventh Circuit explained that " '[i]n determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' " *Brown,* 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.)), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). " 'The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.' " *Id.* (internal quotations and citations omitted). The Eleventh Circuit "requires that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (citation omitted).

*Humphrey v. Napolitano*, 847 F. Supp. 2d 1349, 1355-56 (S.D. Fla. 2012) *aff'd*, 12-11726, 2013 WL 1715321 (11th Cir. Apr. 19, 2013). The plaintiff and the Woods brothers were involved in the same fight and only the plaintiff, who is an African American, was suspended. Under these allegations, the disparate treatment claim survives a motion to dismiss.

### 3.     *Retaliation*

The defendant argues that the plaintiff has provided no factual support for his retaliation claim.  Instead of setting out specific facts supporting his claim, the plaintiff's response brief merely quotes case law on pleadings standards.

The Eleventh Circuit has stated:

> Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To make a prima facie showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment action; and (3) that there is "some causal relation" between the two events. *See McCann v. Tillman,* 526 F.3d 1370, 1375 (11th Cir.2008).

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010).  In this case, the complaint fails because the plaintiff has failed to allege that he engaged in statutorily protected conduct.  He generally alleges that he was suspended "because of his having complained about unlawful discrimination," (doc. 1, p. 2) and that he "complained of the acts against him." (doc. 1, p. 4).  *Iqbal* tells us to ignore such conclusory allegations.

Only one specific complaint is set out by the plaintiff, the complaint to his supervisor about the verbal altercation with Mason Woods.  Importantly, the plaintiff

12

is not clear as to whether it was a complaint about a "practice made an unlawful employment practice" under Title VII. In other words, it is not clear whether the plaintiff complained merely about the altercation, or was specific about the words used by Woods, or even alleged that he felt that this was discrimination. Even if the court concluded that the plaintiff complained of the "black mother fucker" comment, which is not clear from the complaint, it is not stated that the plaintiff considered that to be discrimination, or said so to his supervisor. It has been noted that "'[t]he employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred.'" *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1280 (S.D. Fla. 2009) <u>aff'd,</u> 383 F. App'x 915 (11th Cir. 2010) quoting *Webb v. R & B Holding Co., Inc.,* 992 F.Supp. 1382, 1389 (S.D.Fla.1998). The retaliation claim fails.

### 4. *Hostile Work Environment*

The Eleventh Circuit has noted that

to prove a hostile work environment under 42 U.S.C. § 2000e–2(a)(1), a plaintiff must show that her employer discriminated because of her membership in a protected group, and that the offensive conduct was either severe or pervasive enough to alter the terms or conditions of employment; second, Title VII is not a civility code, and not all profane

> or sexual language or conduct will constitute discrimination in the terms and conditions of employment; third, workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context; and fourth, a plaintiff can prove a hostile work environment by showing severe or pervasive discrimination directed against her protected group, even if she herself is not individually singled out in the offensive conduct.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010).  In this case, the complaint discussed only one isolated incident where Woods allegedly referred to the plaintiff as a "black mother fucker."  No other incidents are alleged generally or specifically.  The plaintiff has not stated a plausible hostile work environment claim.

### B. **State Law Claims**

The plaintiff alleges Alabama state law claims of invasion of privacy and intentional infliction of emotional distress.  The defendant moves to dismiss both.

### 1. *Invasion of Privacy*

In Alabama, "the tort of invasion of privacy [is] the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Rosen v. Montgomery Surgical Ctr.*, 825 So.2d 735, 737 (Ala.2001).  The plaintiff makes no argument in support of this claim in his reply brief.  The court is aware of no Eleventh Circuit opinion holding that failure to oppose a motion to dismiss constitutes

14

abandonment of a claim.  However, in an unpublished decision, *Byrd v. Peet*, 249

Fed. Appx. 155 (11th Cir. 2007), in *dicta*, the Eleventh Circuit stated that a plaintiff's

failure, in responding to a motion for judgment on the pleadings, to respond to that

motion as to specific claims did not constitute an abandonment of those claims.  *Id*

at 157.  This court finds the reasoning set out in *Byrd*, as expanded by Chief Judge

William H. Steele in *Gailes v. Marengo County Sheriff's Dept.*, — F. Supp. 2d —,

2013 WL 81227 *4 (S.D. Ala. Jan. 4, 2013), persuasive.

> In sum, until the Eleventh Circuit (or Supreme Court) speaks more
> clearly to the issue or a sister Court (or litigant) provides a more
> compelling rationale, the Court will not treat a claim as abandoned
> merely because the plaintiff has not defended it in opposition to a
> motion to dismiss. Instead, the Court will review the merits of the
> defendant's position and, if it is clearly incorrect or inadequate to satisfy
> the defendant's initial burden, will deny the motion despite the
> plaintiff's failure to respond. If, however, the defendant's presentation
> is adequate to satisfy its initial burden, the Court will not deny the
> motion based on arguments the plaintiff could have made but by silence
> elected not to raise.

*Gailes,* 2013 WL 81227, at *4 -5  (footnotes omitted).  *See also*, *Stewart v. Sanofi*

*Aventis U.S., LLC*, No. 4:13-CV-539-VEH, 2013 WL 1834562 *2 (N.D. Ala. Apr. 30,

2013) (stating that a plaintiff's failure to file any opposition to a motion to dismiss

"does not automatically mean the motion is due to be granted").  Accordingly, this

court will not consider the plaintiff's invasion of privacy claim abandoned.  However,

the complaint contains no factual allegations that would support such a claim.  It is

therefore due to be dismissed on that basis.

### 2.   *Intentional Infliction of Emotional Distress*

The defendant argues that none of the conduct alleged in the complaint amounts to the tort of intentional infliction of emotional distress.  (Doc. 8, pp. 15-16.) The Alabama Supreme Court has stated:

> The intentional infliction of emotional distress is also known as the tort of outrage. *See Chaney v. Ala. West–AL, LLC,* 22 So.3d 488 (Ala.Civ.App.2008).
>
>> "This Court first recognized the tort of outrage in 1980, in *American Road Service Co. v. Inmon,* 394 So.2d 361 (Ala.1980). In *Inmon* this Court recognized the tort proposed by the *Restatement (Second) of Torts* § 46 (1948), holding:
>>
>>> " '[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, *Restatement[ (Second) of Torts* § 46], at 78 [ (1948) ]. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment

16

(d), *Restatement, supra* at 72.'

"394 So.2d at 365. The Court noted in *Inmon* that the tort of outrage

> " 'does not recognize recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Comment, *Restatement, supra,* at 73. The principle applies only to unprivileged, intentional or reckless conduct of an extreme and outrageous nature, and only that which causes severe emotional distress.'

"394 So.2d at 364–65. As this Court has since held:

> " 'The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey,* 519 So.2d 901 (Ala.1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen,* 447 So.2d 133 (Ala.1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.,* 551 So.2d 322 (Ala.1989). See also Michael L. Roberts and Gregory S. Cusimano, *Alabama Tort Law,* § 23.0 (2d ed.1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge,* 565 So.2d 38, 44 (Ala.1990) (citing *American Road Service*

17

*Co. v. Inmon* [, 394 So.2d 361 (Ala.1980) ] ).'

"*Potts v. Hayes,* 771 So.2d 462, 465 (Ala.2000). That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts.* Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. See *O'Rear v. B.H.,* 69 So.3d 106 (Ala.2011). It is clear, however, that the tort of outrage is viable only when the conduct is " 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' " *Horne v. TGM Assocs., L.P.,* 56 So.3d 615, 631 (Ala.2010) (quoting *Inmon,* 394 So.2d at 365)."

*Little v. Robinson,* 72 So.3d 1168, 1172–73 (Ala.2011).

*Ex parte Bole*, 103 So. 3d 40, 51-53 (Ala. 2012). *See also, Short v. Mando Am. Corp.*, 805 F. Supp. 2d 1246, 1277 (M.D. Ala. 2011) (race discrimination and retaliation claims do not fall within the three limited circumstances recognized by the Alabama Supreme Court for the tort of outrage).

The plaintiff cites *Rice v. United Ins. Co. of Am.*, 465 So. 2d 1100, 1103 (Ala. 1984), for the proposition that [t]he Alabama Supreme Court has held that some types of discrimination in the work place may constitute the tort of outrage." (Doc. 13, p. 7.) In that case, the Alabama Supreme Court held that a plaintiff could bring an

outrage claim in addition to a Title VII claim because a "cause of action for intentional infliction of emotional distress is not subsumed by Title VII." It does not stand for the proposition that the facts of *this* case support an outrage claim.

The types of conduct in the workplace that would constitute outrage were summarized by Judge Steele of the Southern District of Alabama in his opinion in *Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1108 (S.D. Ala. 2005), where he stated:

> [T]he line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public policy. Where a plaintiff complains that her discharge contravenes public policy, particularly if the discharge was the culmination of a protracted pattern of discrimination in violation of public policy, she may properly pursue a claim of outrage because the violation of public policy furnishes the requisite "sound of fury" to accompany the termination. *Smitherman,* 872 So.2d at 840 (outrage claim not cognizable if termination is "not for a reason which contravenes public policy," and if termination was not accompanied with "sound of fury") (quoting *Harrell,* 495 So.2d at 1387); *see also Wyatt v. BellSouth, Inc.,* 998 F.Supp. 1303, 1312 (M.D.Ala.1998) (under Alabama law, "the discharge of an employee rises to the level of the tort of outrage only if the discharge violates public policy"). Alabama courts have construed this standard to authorize outrage claims where a plaintiff is complaining about discrimination in retaliation for exercising the fundamental right to marry, or about intrusion on her federally protected right to be free from gender discrimination. *See Rice v. United Ins. Co. of America,* 465 So.2d 1100, 1102 (Ala.1984) (trial court erred in dismissing outrage claim where pregnant employee claimed employer discriminated because of her pregnancy by engaging in a pattern of conduct over a period of several months aimed at forcing

her to leave her job, thereby violating plaintiff's federally protected right to be free from discrimination based on sex); *Cunningham v. Dabbs,* 703 So.2d 979, 983 (Ala.Civ.App.1997) (finding jury question on outrage claim where plaintiff did not claim wrongful discharge of at-will employee, but instead alleged a pattern of harassment and a termination of employment in violation of her fundamental right to marry).

*Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1108 (S.D. Ala. 2005).

The allegations alleged in the complaint center on two altercations. In the first, the plaintiff alleges that only (racially offensive) words were uttered on one occasion. In the second, he alleges that he was physically assaulted (later that same day). The plaintiff correctly argues that the court must treat these allegations as true in determining that there is an outrage claim. (Doc. 13, p. 7.) Even so, these are not allegations of conduct which was "extreme and outrageous," like those which have been recognized in Alabama in the past. There is no allegation of conduct which contravenes public policy or carries with it a "sound of fury." The outrage claim fails.

## IV.  CONCLUSION

Based on the foregoing the defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** to the extent that it seeks dismissal of the plaintiff's Title VII disparate treatment and 42 U.S.C. § 1981 race discrimination claims based upon his suspension for engaging in the fight on

December 7, 2011.  It is **GRANTED** in all other respects and as to all other counts.

**DONE** and **ORDERED** this 20th day of June, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge